OPINION
{¶ 1} Defendant, Michael L. Johnson, appeals from his conviction and sentence for murder, felonious assault, and having weapons under a disability.
 {¶ 2} In the early morning hours of July 18, 2004, Curtis Stone, Ryan Tackaberry and Anthony Jackson were at the Forest *Page 2 
Park apartments in Harrison Township, Montgomery County, Ohio. Stone and Tackaberry lived in apartment B. Defendant lived in apartment J. Stone and Tackaberry saw Defendant and they invited him into their apartment to smoke a marijuana blunt with them. Defendant suggested they all go to his apartment to smoke the blunt, and Stone, Tackaberry and Jackson followed Defendant to his apartment.
 {¶ 3} The four men were all sitting around smoking marijuana and listening to music inside Defendant's apartment when Defendant suddenly pulled out a shotgun, pointed it at Jackson and Stone, and started shooting. Tackaberry saw Jackson fly back against the sofa, and he and Stone ran for the door. Before they could get out, however, Defendant shot Stone in the arm. Tackaberry escaped unharmed, and he and Stone ran back to their apartment and called 911. Meanwhile, Defendant shot Jackson three times in the head with a .22 caliber revolver. Defendant's girlfriend, Tyra Smart, called 911 and said someone was trying to break in and kill them. Because of loud music in Defendant's apartment, Smart could not hear the 911 operator, so she hung up and then called back. This time Smart said Defendant was being robbed.
 {¶ 4} After police arrived on the scene and forced entry into Defendant's apartment, they found Defendant lying on the *Page 3 
floor smoking a cigarette. Jackson was deceased, slumped over on the sofa. Defendant claimed he had been robbed. Police arrested Defendant and transported him to the police station. After waiving hisMiranda rights Defendant gave an oral statement to police. Defendant continued to claim he had been robbed, but provided no details except that Tackaberry had a gun and it jammed. Defendant admitted shooting Jackson and Stone but claimed he was not aiming at anyone and that he was just scared. Despite an extensive search of the Defendant's apartment, Stone and Tackaberry's apartment, and Jackson's vehicle, the only weapons recovered by police were Defendant's shotgun and his .22 caliber revolver.
 {¶ 5} Defendant was indicted on one count of purposeful murder, R.C.2903.02(A), and one count of felony murder, for allegedly causing Anthony Jackson's death as a proximate result of committing felonious assault, R.C. 2903.02(B). Defendant was additionally indicted on two counts of felonious assault relating to Curtis Stone, one alleging that Defendant knowingly caused or attempted to cause physical harm to Stone by means of a deadly weapon, R.C. 2903.11(A)(2), and the other alleging that Defendant knowingly caused serious physical harm to Stone, R.C.2903.11(A)(1). Defendant was also charged with felonious assault, knowingly causing or attempting to cause *Page 4 
physical harm by means of a deadly weapon in violation of R.C.2903.11(A)(2), with respect to Ryan Tackaberry, and having weapons while under a disability, R.C. 2923.13(A)(2). All offenses except the weapons under disability charge carried a three-year firearm specification. R.C.2941.145.
 {¶ 6} The weapons under disability charge was tried to the court. All other charges were tried before a jury. At the trial, Stone and Tackaberry testified that no one except Defendant had any guns, and that nobody pulled a gun on Defendant, threatened him, or tried to rob him. Defendant was found guilty of all charges and specifications.
 {¶ 7} The trial court merged the two murder charges and sentenced Defendant to fifteen years to life. The court also merged the two counts of felonious assault relating to Curtis Stone and sentenced Defendant to seven years. For the felonious assault involving Ryan Tackaberry, the trial court sentenced Defendant to three years, and the court imposed a four year sentence for having weapons under disability. The trial court merged all of the firearm specifications and imposed one three year term. The court ordered all of the sentences to be served consecutively for a total sentence of thirty-two years to life.
 {¶ 8} Defendant timely appealed to this court from his *Page 5 
convictions and sentences.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "APPELLANT'S SENTENCES, FOR TERMS IN EXCESS OF THE MINIMUM AND TO BE SERVED CONSECUTIVELY, WERE IMPOSED PURSUANT TO STATUTES WHICH HAVE BEEN RULED UNCONSTITUTIONAL IN STATE V. FOSTER, WHICH APPELLANT'S SENTENCE SHOULD BE VACATED AND REMANDED FOR RESENTENCING."
 {¶ 10} Citing State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, Defendant argues that the specific findings the trial court made pursuant to R.C. 2929.14(B) and 2929.14(E)(4) to justify its greater than minimum and consecutive sentences violated his Sixth Amendment right to a jury trial per Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403, and therefore his sentences must be reversed and the case remanded for resentencing.
 {¶ 11} With respect to the felonious assault charges involving Stone and Tackaberry, which are felonious of the second degree, the trial court imposed greater than minimum sentences of seven years and three years respectively, based upon findings the court made pursuant to R.C.2929.14(B)(2). The penalty range for felonies of the second degree is two to eight years. R.C. 2929.14(A)(2). With respect to the having weapons under disability charge, a felony of the third degree, *Page 6 
the trial court imposed a greater than minimum sentence of four years based upon findings the court made pursuant to R.C. 2929.14(B)(2). The penalty range for a felony of the third degree is one to five years. The court ordered that all of the sentences be served consecutively based upon findings the court made pursuant to R.C. 2929.14(E)(4).
 {¶ 12} In Foster, the Supreme Court held that the findings the court is mandated by R.C. 2929.14(B)and (E)(4) to make violate a defendant's Sixth Amendment rights and are unconstitutional. Id. At ¶ 61, 67.Foster further held that sentences thus imposed must be reversed and remanded for resentencing if the case was pending on direct appeal whenFoster was decided. Id at ¶ 106.
 {¶ 13} In State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, which was decided on September 26, 2007, the Ohio Supreme Court clarified its mandate in Foster. Cases pending on direct review when Foster was decided must be remanded for resentencing if a Blakely error occurred, but a defendant who failed to argue a Blakely error in the trial court, when his sentence was imposed, forfeits his right to argue theBlakely error on appeal. Payne, at ¶ 21. Further, unless a defendant shows that the court would have imposed a more lenient sentence absent the Blakely error, no plain error occurred. *Page 7 Payne, at ¶ 25.
 {¶ 14} Defendant-Appellant Johnson failed to argue theBlakely error he now asserts on appeal, when he was sentenced. The failure forfeits his right to argue the error he assigns on appeal.Payne. No plain error is demonstrated. Id.
 {¶ 15} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 16} "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT ON THE AFFIRMATIVE DEFENSE OF SELF DEFENSE FOR BOTH COUNTS OF MURDER AND THE FELONIOUS ASSAULT COUNTS FOR CURTIS STONE."
 {¶ 17} Defendant argues that the trial court abused its discretion by refusing to instruct the jury on the defense of self-defense with respect to all of the charges, including the murder and felonious assault charges pertaining to Anthony Jackson and Curtis Stone.
 {¶ 18} During a conference between the parties and the trial court regarding the court's proposed jury instructions, Defendant requested that the court instruct the jury on self-defense with respect to all of the charges. The trial court agreed to and did instruct the jury on self-defense with respect to the felonious assault charge relating to Ryan Tackaberry because of Defendant's statement to police that Tackaberry had a gun and it jammed. The court refused to give *Page 8 
a self-defense instruction with respect to the murder and felonious assault charges relating to Anthony Jackson and Curtis Stone because no evidence was offered that they were armed or involved with Tackaberry in any common scheme or plan to rob Defendant.
 {¶ 19} Self-defense is an affirmative defense and the burden of going forward with evidence on that issue, and the burden of proof by a preponderance of the evidence, is upon the accused. R.C. 2901.05(A); State v. Palmer, 80 Ohio St.3d 543, 1997-Ohio-312. In State v. Robbins (1979), 58 Ohio St.2d 74, the Ohio Supreme Court stated:
 {¶ 20} "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. (State v. Melchior, 56 Ohio St.2d 15, 381 N.E.2d 195, 381 N.E.2d 190, approved and followed.)" Syllabus at ¶ 2.
 {¶ 21} The proper standard for determining whether a criminal defendant has successfully raised an affirmative defense is to inquire whether the defendant has introduced *Page 9 
sufficient evidence which, if believed, would raise a question in the minds of reasonable men concerning the existence of the issue. Melchior, at ¶ 1 of the Syllabus. In order to establish that the failure to give the requested jury instruction on self-defense was reversible error, Defendant must show that the court's refusal to give the requested instruction was an abuse of discretion and that he suffered prejudice as a result. State v. Griffin (July 15, 2005), Montgomery App. No. 20681,2005-Ohio-3698. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 22} Defendant did not testify at trial or present any evidence to support his claim that he acted in self-defense. Rather, Defendant relies upon the statements he made to Detective Ward that they tried to rob him, that the white guy (Tackaberry) pulled a gun and it jammed, that he was scared, that Jackson or Stone "could a had" a gun, and that there were three of them and just one of him. Defendant claims that his statements to police, if believed, are sufficient to raise a question in the minds of reasonable men concerning whether he acted in self-defense. *Page 10 
 {¶ 23} Defendant also told Detective Ward that he didn't mean to shoot the men. That is inconsistent with his further statement that he was firing at the three men, and the physical evidence which shows that Jackson was shot three times in the head. Defendant further told police that he used the .22 caliber revolver first and then the shotgun because "the .22 was a joke, it's too small." That is inconsistent with what Stone and Tackaberry told police, and the sounds Defendant's next door neighbors heard.
 {¶ 24} Despite the fact that police arrived on the scene within five minutes after the first 911 call and extensively searched the scene of this shooting, as well as Jackson's car and the home of Tackaberry and Stone, police did not find the gun Defendant claims Tackaberry displayed. Defendant's statement to police is the only evidence suggesting that Tackaberry had or pulled out a gun. Police did find inside Defendant's home the two firearms Defendant used in this shooting.
 {¶ 25} Defendant did not tell Detective Ward what Tackaberry said or did that caused him to believe he was being robbed, much less what Stone or Jackson said or did that caused him to believe that they might be armed or involved in a plan to rob him. Stone and Tackaberry both testified at *Page 11 
trial that while they and Jackson and Defendant were all sitting around smoking marijuana and listening to music, Defendant suddenly picked up a shotgun and started shooting. They further testified that neither they nor Jackson had a gun or in any way threatened Defendant or tried to rob him.
 {¶ 26} Defendant simply did not present sufficient evidence in this case that would enable a juror to reasonably believe that Defendant had a bona fide belief that he was in imminent danger of death or great bodily harm from either Stone or Jackson, or that they were involved in any common scheme or plan to rob Defendant at gunpoint, that warranted Defendant's use of deadly force to defend himself against Stone or Jackson.
 {¶ 27} The evidence presented was insufficient to support a self-defense instruction with respect to Defendant's shooting of Jackson and Stone, and the trial court did not abuse its discretion by refusing to instruct the jury on that issue.
 {¶ 28} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 29} "APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT IN COUNT FIVE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION."
 {¶ 30} Defendant argues that his conviction for knowingly *Page 12 
attempting to cause physical harm to Ryan Tackaberry by means of a deadly weapon, R.C. 2903.11(A)(2), is not supported by legally sufficient evidence and is against the manifest weight of the evidence because there is no evidence that Defendant ever pointed or aimed the shotgun at Tackaberry.
 {¶ 31} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 32} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 33} Curtis Stone testified that Defendant aimed the shotgun at him and Jackson as they sat on the sofa. After *Page 13 
Defendant fired the first shot, which struck Jackson, Stone jumped up off the sofa and ran for the door. As Stone got near the door, Defendant shot him in the arm with the shotgun. Stone continued to run out of Defendant's apartment.
 {¶ 34} Ryan Tackaberry testified that he was sitting on the loveseat when Defendant aimed the shotgun at Jackson and pulled the trigger. Tackaberry saw Jackson fly back against the sofa, and the next thing he remembers is that Stone ran in front of him heading toward the door. Tackaberry grabbed Stone's shirt and followed Stone out the door.
 {¶ 35} Stone's and Tackaberry's testimony demonstrates that Tackaberry was directly behind Stone when Defendant shot Stone with the shotgun. Although Tackaberry was not hit by the shotgun blast, he was clearly in the line of fire. Furthermore, in his statement to Detective Ward, Defendant admitted that he was shooting at the three men. Viewing this evidence in a light most favorable to the State, a rational trier of facts could find beyond a reasonable doubt that Defendant knowingly attempted to cause physical harm to Tackaberry by means of a deadly weapon. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 36} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing *Page 14 
inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 37} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins, supra.
 {¶ 38} In order to find that a manifest miscarriage occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 39} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. *Page 15 
16288, we observed:
 {¶ 40} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 41} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 42} In his statement to Detective Ward, Defendant said that the three men tried to rob him, that the white guy (Tackaberry) pulled a gun and it jammed, that he was scared, that Stone and Jackson "could a had" a gun, and that there were three of them and just one of him. Based upon that evidence, the trial court instructed the jury on self-defense with respect to the felonious assault charge involving Tackaberry. The jury rejected Defendant's claim that he acted *Page 16 
in self-defense, choosing to believe the testimony of the victims, Stone and Tackaberry, rather than Defendant's statements he made to police.
 {¶ 43} The only evidence that Tackaberry had a gun was Defendant's statement to police. The police investigation in this case failed to disclose any evidence to support Defendant's claims that he was robbed and that Tackaberry had pulled a gun. The credibility of Defendant's claims was further lessened by the fact that he provided no details regarding the alleged robbery, and according to Defendant's statements to police, his response to Tackaberry allegedly pulling a gun on him was to shoot Anthony Jackson, someone who according to the evidence was unarmed and not threatening Defendant.
 {¶ 44} The jury did not lose its way simply because it chose to believe the State's witnesses rather than Defendant's statement to police, which the jury was free to do. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury as trier of facts to decide. DeHass. The guilty verdicts are not "contrary to" the testimony of the victims, Curtis Stone and Ryan Tackaberry.
 {¶ 45} Reviewing this record as a whole we cannot say that *Page 17 
the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the victim's story rather than Defendant's, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 46} Defendant's third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 47} "APPELLANT'S CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT ON CURTIS STONE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 48} Defendant argues that his convictions for the murder of Anthony Jackson and the felonious assault on Curtis Stone are against the manifest weight of the evidence. In support of that claim Defendant points out that neither Stone nor Tackaberry offered any explanation or reason why these shootings occurred. The State is not required, however, to prove Defendant's motive in order to secure a conviction. Fabian v. State (1918), 98 Ohio St. 184; State v. Curry (1975), 43 Ohio St.2d 66. Defendant contends that the only logical explanation for the shooting was his statement to police that they tried to rob him, that Tackaberry pulled a gun and it jammed, and Defendant shot the men in self-defense. Therefore, the jury lost its way in believing the State's *Page 18 
witnesses and finding Defendant guilty.
 {¶ 49} Defendant's argument conveniently ignores the fact that the jury rejected Defendant's claim that he acted in self-defense with respect to the felonious assault of Tackaberry, the only person who, according to Defendant's own statements, had a gun. Furthermore, as we pointed out in concluding that the evidence presented was not sufficient to raise a question in the minds of reasonable men concerning whether Defendant acted in self-defense in shooting Jackson and Stone (Error No. 2), there was no evidence in this case that Jackson or Stone was armed, only Defendant's statement to police that they "could a had" a gun. Moreover, there was no evidence that Jackson or Stone said or did anything that indicated they were a threat to Defendant or were part of a plan to rob him. The evidence presented did not warrant a self-defense instruction with respect to Defendant's shooting of Jackson and Stone.
 {¶ 50} Reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's convictions for the murder of Anthony Jackson and felonious assault on Curtis Stone are not against the manifest weight of the evidence. *Page 19 
 {¶ 51} Defendant's fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 52} "APPELLANT'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT TO APPELLANT'S SENTENCE PURSUANT TO UNCONSTITUTIONAL STATUTES; AND FOR FAILING TO REQUEST AN INSTRUCTION FOR INVOLUNTARY AND VOLUNTARY MANSLAUGHTER."
 {¶ 53} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different.Id., State v. Bradley (1989), 42 Ohio St.3d 136. Further, the threshold inquiry should be whether a defendant was prejudiced, not whether counsel's performance was deficient. Strickland.
 {¶ 54} A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. Strickland, at 697; Bradley, at 143. If an *Page 20 
ineffective assistance of counsel claim is more readily rejected for lack of sufficient prejudice, that alternative should be followed. Id; State v. Winterbotham (August 4, 2006), Greene App. No. 05CA100,2006-Ohio-3989.
 {¶ 55} Defendant argues that his trial counsel performed in a deficient manner by (1) failing to object to his greater than minimum and consecutive sentences that were imposed based upon findings made by the court pursuant to statutes, R.C. 2929.14(B) and (E)(4), thatFoster declared unconstitutional, and by (2) failing to request a jury instruction on voluntary and involuntary manslaughter.
 {¶ 56} Defendant's first contention is grounded on his counsel's failure to interpose a Blakely objection. In State v. Payne, the Supreme Court held that the defendant could not demonstrate plain error with respect to the right to challenge his sentence on appeal that he had forfeited by failing to raise a Blakely objection when his sentence was imposed, because he "cannot establish that but for the Blakely error, he would have received a more lenient sentence." Id. ¶ 25. An ineffective assistance of counsel claim requires a lesser showing, a reasonable probability of a different result. Strickland; Bradley. Nevertheless, the same analysis applies to both contentions, and we believe that Defendant's *Page 21 
ineffective assistance of counsel claim likewise fails for lack of a reasonable probability that he would have received a more lenient sentence had his counsel interposed a Blakely objection.
 {¶ 57} Defendant summarily states in his brief that his trial counsel performed deficiently by failing to request a jury instruction on involuntary manslaughter. Defendant does not separately argue that particular claimed error, however, nor does he provide any reasons or citations to any authorities in support of his contention. App.R. 16(A)(7). Accordingly, we need not address that claim. App.R. 12(A)(2).
 {¶ 58} Defendant does argue that his trial counsel performed deficiently by failing to request a jury instruction on voluntary manslaughter. Defendant contends that his statements to Detective Ward provide sufficient evidence of provocation to warrant a voluntary manslaughter instruction.
 {¶ 59} Defendant was charged with purposeful murder in violation of R.C. 2903.02(A), and felony murder in violation of R.C. 2903.02(B). Both charges relate to the shooting death of Anthony Jackson. A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as fact-finder. State v. Comen (1990), 50 Ohio St.3d 206. Defendant claims *Page 22 
that his trial counsel should have requested an instruction on voluntary manslaughter in accordance with R.C. 2903.03, which provides:
 {¶ 60} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 61} Voluntary manslaughter is an offense of inferior degree to murder. State v. Shane (1992), 63 Ohio St.3d 630, 632. The test for whether the trial court should instruct the jury on voluntary manslaughter when the defendant is charged with murder is the same test applied when an instruction on a lesser included offense is sought.Id. The instruction must be given when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. Id.
 {¶ 62} The principal difference between murder and voluntary manslaughter is that the latter offense includes the mitigating element of serious provocation by the victim that is reasonably sufficient to incite the defendant into using deadly force. State v. Thomas (January 10, 2003), Montgomery App. No. 19131, 2003-Ohio-42. In determining for purposes of voluntary manslaughter what constitutes reasonably sufficient provocation, an objective standard is first applied to *Page 23 
determine whether the provocation was reasonably sufficient to bring on a sudden passion or fit of rage. Id. The provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Shane, supra; State v. Mack, 82 Ohio St.3d 198,1998-Ohio-375; Thomas, supra. Only if that standard is met does the inquiry then shift to a subjective standard; whether the particular defendant, given his emotional and mental state and the circumstances that surrounded him at the time of the crime, was under the influence of a sudden passion or in a sudden fit of rage. Id.
 {¶ 63} The evidence in this case fails to satisfy the objective prong of the reasonable provocation test because it does not demonstrate that the conduct of the victim, Anthony Jackson, constituted provocation reasonably sufficient to arouse the passions of an ordinary person beyond the power of his control and therefore warrant that person in using deadly force.
 {¶ 64} As we previously pointed out, there is no evidence in this case that Jackson said or did anything threatening to Defendant or that might cause Defendant to believe that Jackson was armed or part of any plan or scheme to rob Defendant. In his statement to police Defendant admitted that no one said anything bad to him to upset him. The evidence in this case does not demonstrate even so much as a harsh or *Page 24 
`angry word between Jackson and Defendant, much less a more serious form of altercation. On this record Defendant has failed to demonstrate provocation by Jackson that is objectively sufficient to bring on a sudden passion or fit of rage. Thus, the evidence does not warrant an instruction on voluntary manslaughter and defense counsel did not perform in a deficient manner by failing to request that instruction. Ineffective assistance of counsel has not been demonstrated.
 {¶ 65} Defendant's fifth assignment of error is overruled. Having overruled the errors Defendant-Appellant assigned, his convictions and sentences will be affirmed.
DONOVAN, J. And VALEN, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1