OPINION
{¶ 1} Defendant-Appellant, Justin D. Goldman, appeals a judgment of the Clark County Common Pleas Court, finding him guilty of felonious assault and sentencing him to eight years in prison. Goldman asserts that verdict on the felonious assault charge was not supported by sufficient evidence and that it was contrary to the manifest weight of the evidence. *Page 2 
He also contends that the trial court instructed the jury improperly and, because counsel did not object to the instructions, his counsel was ineffective. We determine that the verdict was supported by sufficient evidence, that the jury did not lose its way in returning the guilty verdict, and that there was no error in the trial court's instructions to the jury. Therefore, we affirm the judgment of conviction.
 {¶ 2} In the evening of August 25-26, 2005, Sunny McAfee, Zach Frederick and Heath Homes were bar hopping, eventually arriving at the Savoy Club in Springfield, Ohio at about 1:00 a.m. Both Frederick and McAfee were intoxicated. McAfee wanted to go home, but Frederick refused to take her. McAfee then approached Justin Goldman and Steve Grabill, asking them for a ride and telling them that Frederick had smacked her in the face. A fight then ensued, with Grabill and Goldman attacking Frederick and continuing to hit and kick him after he went to the ground. The fight terminated when someone yelled that the cops were coming.
 {¶ 3} When the EMS medics arrived at the scene, Frederick was unconscious. He was taken to Springfield Mercy Medical Center where he remained unconscious while being treated by an emergency room physician. The physician determined him to be in critical condition and in need of immediate neurological care. He was then transported by helicopter to the nearest trauma center, at Ohio State University, to be evaluated by a neurospecialist. At the time of the trial, over a year later, Frederick had still not totally recovered from the injuries sustained in the beating.
 {¶ 4} Goldman and Grabill were both indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. At the subsequent jury trial, Goldman was convicted of the charge, and he was sentenced on September 25, 2006 to a term of *Page 3 
eight years in prison. From this judgment, Goldman filed this appeal, asserting six assignments of error for our consideration.
 First Assignment of Error {¶ 5} "The evidence against the defendant was insufficient as a matter of law to establish the offense of felonious assault."
 Second Assignment of Error {¶ 6} "The verdict was against the manifest weight of the evidence."
 {¶ 7} In his first assignment of error, Goldman asserts that his conviction for felonious assault was not supported by sufficient evidence. In his second assignment of error, Goldman asserts that his conviction for felonious assault was against the manifest weight of the evidence. Because "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," we will address each separately. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.
 {¶ 8} We first address Goldman's claim that the evidence was insufficient to support the finding that he was guilty of felonious assault beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 9} Goldman was charged with committing a felonious assault in violation of R.C. 2903.11(A)(1). The essential elements of felonious assault that the state had to prove were that Goldman (1) knowingly caused or attempted to cause (2) serious physical harm to another *Page 4 
person. R.C. 2903.11(A)(1).
 {¶ 10} Because Goldman apparently concedes that Frederick sustained serious physical harm as a result of the altercation on August 26, 2005, we will only address the issue of whether Goldman knowingly caused any of these injuries. Goldman, in his brief, admits that Sunny McAfee testified at trial that Goldman "took part in the hitting and kicking" of Frederick.
 {¶ 11} Upon a review of the transcript, we determine that there is sufficient evidence that would establish Goldman knowingly caused at least some of the injuries sustained by Frederick. As conceded by Goldman, McAfee, the single witness who was central to the altercation, testified as follows:
 {¶ 12} "Q. Okay. And the confrontation, what happened that you recall of the confrontation?
 {¶ 13} "A. There was hitting, there was kicking. It was so — so long ago and it happened kinda quick, you know, I don't.
 {¶ 14} "Q. Did Steven [Grabill] take part in the hitting?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. And, did J. D. [Goldman] take part in the hitting and kicking?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. And this was on Zach Frederick, correct?
 {¶ 19} "A. Yes, it was.
 {¶ 20} "Q. How far would you have been from them when this all would have happened?
 {¶ 21} "A. I was right there, kinda 10, 15 feet, maybe. *Page 5 
 {¶ 22} "Q. What did Zach do when this all happened?
 {¶ 23} "A. After, he was pretty intoxicated when he hit the ground. He was just laying. I mean he couldn't do anything, obviously.
 {¶ 24} "Q. Okay. And what happened — did the assault stop when he hit the ground or what happened when he hit the ground?
 {¶ 25} "A. No, it continued.
 {¶ 26} "Q. And did J. D. [Goldman] the individual that you say was J. D., did he take part in that?
 {¶ 27} "A. Yes."
 {¶ 28} Additionally, Heath Holmes testified that, while he did not observe who hit whom in the altercation, Goldman was standing over the victim when it was over. Even Goldman admitted in his own testimony that he was involved in the altercation, although he minimized his activity. Goldman testified that "* * * Zach was hitting [Grabill] in the face, I pulled Zach off of him, I grabbed him by the hips and he wrestled me down to the ground. Once he went to the ground, I got kicked, he got kicked. * * *."
 {¶ 29} While these are slightly differing accounts of the incident, it is the function of the jury to resolve these conflicts and determine what evidence to believe. Clearly, in viewing this testimony in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found that Goldman knowingly caused serious physical harm to Zach Frederick.
 {¶ 30} We next address Goldman's claim that his conviction on the charge of felonious assault was against the manifest weight of the evidence. When an appellate court analyzes a *Page 6 
conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 31} Goldman claims that because numerous people were involved in this fight-including a friend of Grabill, Andrew, who left the scene with a broken ankle — the jury must have lost its way in concluding that the injuries to Frederick were sustained, at least in part, as a result of Goldman's acts. However, the jury was free to believe or disbelieve the testimony of any witness as to any issue, and the testimony of any one witness as to any material fact, believed by the trier of fact, is sufficient to prove any such fact.
 {¶ 32} After having reviewed the entire record and considered all of the conflicting evidence, we cannot say that the jury clearly lost its way in finding Goldman guilty of felonious assault.
 {¶ 33} Accordingly, Goldman's first and second assignments of error are overruled.
 Third Assignment of Error {¶ 34} "The trial court committed plain error in failing to charge the jury on the offense of inferior degree of aggravated assault."
 Fourth Assignment of Error {¶ 35} "The trial court committed plain error in its instruction on self-defense by *Page 7 
limiting self-defense to less than serious physical harm."
 Fifth Assignment of Error {¶ 36} "The trial court committed plain error by instructing that the defendant has the burden of proving self-defense of another [sic]."
 {¶ 37} In this case, Goldman's counsel did not object to the jury instructions. Generally speaking, a failure to object to any trial error waives all but plain error on appeal. State v. Underwood (1983),3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." Id.
 {¶ 38} Although Goldman's trial counsel did not object to the jury instructions, Goldman contends that the trial court's error is of such magnitude that the plain error doctrine should be invoked. To constitute plain error, the error must be obvious on the record, and the error must be so fundamental that it should have been apparent to the trial court without objection. State v. Tichon (1995), 102 Ohio App.3d 758,658 N.E.2d 16. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. The decision to conduct a plain error review is discretionary with the reviewing court. State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62.
 {¶ 39} In his third assignment of error, Goldman argues that the trial court committed plain error in not instructing the jury on the lesser offense of aggravated assault. More specifically, he claims that there was serious provocation because he was responding "to the *Page 8 
plea of a young woman who had just been hit by a drunk and abusive friend," and, because of this, the jury should have been allowed to consider aggravated assault in addition to felonious assault.
 {¶ 40} In his fourth and fifth assignments of error, Goldman asserts that the trial court's instruction on the affirmative defense of "defense of another" constitutes plain error because the instruction limited this defense to causing less-than serious physical harm and because the court instructed the jury that the defendant had the burden of proof of the affirmative defense.
 {¶ 41} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 42} The trial court's instructions herein were not unreasonable, arbitrary, or unconscionable. Aggravated assault is an inferior degree of felonious assault. State v. Deem (1988), 40 Ohio St.3d 205, 211,533 N.E.2d 294. The elements of both crimes are identical, except that aggravated assault has the mitigating element of serious provocation. Id. at 210-11. For provocation to be serious, it must be "reasonably sufficient to bring on extreme stress" and "to incite or to arouse the defendant into using deadly force." Id. at 211.
 {¶ 43} The evidence herein would not have supported a conviction for the lesser offense because there was no serious provocation of Goldman. While Goldman argues that he was provoked by having a young woman tell him that she had been slapped by her boyfriend, we do *Page 9 
not find that to be serious provocation that would have aroused the defendant to use deadly force. Therefore, the trial court's failure to charge on the lesser offense was not error.
 {¶ 44} Additionally, the trial court here did charge the jury on the affirmative defense of "defense of another." In reviewing the transcript, it is apparent that the court utilized the pattern jury instruction contained in 4 Ohio Jury Instructions (2006), Sections 411.33 and 411.35. This instruction is a correct statement of the law in Ohio. State v. Williford (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279;State v. Wenger (1979), 58 Ohio St.2d 336, 390 N.E.2d 801; and State v.Marsh (1990), 71 Ohio App.3d 64, 593 N.E.2d 35. And, it is well-accepted that a defendant asserting an affirmative defense has the burden of proof, by a preponderance of the evidence, of an affirmative defense.State v. Johnson, Montgomery App. No. 21459, 2007-Ohio-5662, ¶ 19, citing R.C. 2901.05(A).
 {¶ 45} Because there is no error in the instructions as given by the court, there is no plain error. Goldman's third, fourth and fifth assignments of error are overruled.
 Sixth Assignment of Error {¶ 46} "The defendant received ineffective assistance of counsel."
 {¶ 47} In this assignment of error, Goldman claims that his counsel was ineffective by failing to request a jury instruction on the lesser offense of aggravated assault and by acceding to the court's instructions on the affirmative defense of "defense of another."
 {¶ 48} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court interpreted the meaning of the accused's right to counsel and the standard by which ineffective assistance of counsel should be determined. The two-part test requires that a convicted defendant alleging ineffective assistance of counsel must show not *Page 10 
only that counsel was not functioning as the counsel guaranteed by the Sixth Amendment so as to provide reasonably effective assistance but also that counsel's errors were so serious as to deprive the defendant of a fair trial because of a reasonable probability that, but for counsel's unprofessional errors, the results would have been different. Id. at 687. Strickland goes on to say that "judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citations omitted).
 {¶ 49} Because we have already determined that the trial court's instructions were correct in the particulars assigned and argued in assignments of error three, four, and five, we can say that counsel was not ineffective in this regard. Therefore, Goldman's sixth assignment of error is overruled.
 {¶ 50} Based on the foregoing, the conviction appealed from is affirmed.
FAIN, J. and DONOVAN, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1