OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Steven L. Henry, filed June 29, 2007. On March 19, 2007, Henry was indicted on one count of felonious assault, in violation of R.C. 2903.11. Henry entered a plea of not guilty, and following a jury trial in the Clark County Court of Common Pleas, Henry was found guilty of felonious assault. Henry *Page 2 
received a four year sentence.
 {¶ 2} The events giving rise to this matter began on March 12, 2007, when Jerome Paris, Henry's neighbor, left his apartment to walk to a nearby store to buy cigars. Henry, who was in his yard crushing cans, walked quickly toward Paris and began yelling at him. Paris indicated to Henry that he did not want to speak with him. Paris turned to go toward the store, and in his peripheral vision he then observed Henry swinging a shovel toward Paris' head. Paris turned back around and threw his arm up and was struck with the shovel in the arm. Paris, who walks with a cane, used the cane to deflect two more blows from the shovel. Paris then grabbed Henry in a headlock and told him to stop and to leave him alone. The shovel was on the ground. Henry told Paris to let him go, and Paris released him. Paris returned to his apartment, as did Henry, who picked up the shovel. Paris dialed 911. As he made the call, Henry appeared on the sidewalk and yelled at Paris through the window. Paris remained inside until the ambulance arrived, and Henry then left the scene in a van. At the hospital, Paris was given an icepack and vicodin, and released.
 {¶ 3} The following witnesses testified at trial: Rick Fleming and Greg Garman, police officers for the City of Springfield; Paris; Julian Henderson, a neighbor of the parties and an eyewitness to the incident; and Henry.
 {¶ 4} Fleming stated that he responded to the hospital and interviewed Paris. He observed that Paris' elbow was swollen. Fleming then proceeded to the scene to see if Henry's van was there. It was not, and Fleming's shift was ending, so he obtained a warrant for Henry's arrest and relayed the information he had to Garman, whose shift was beginning at 3:00 p.m.
 {¶ 5} Garman proceeded to the scene and observed Henry's van in the parking lot of *Page 3 
the apartment complex. He knocked on Henry's door, and when Henry answered, Garman advised him that a warrant had been issued for Henry's arrest for felonious assault. Henry told Garman that he and Paris had gotten into a verbal argument over a woman, and he admitted hitting Paris with the shovel. Garman brought Henry to the police department.
 {¶ 6} Paris testified that he walks with a cane due to a disability in his knee and his back. Paris stated that he met Henry when Paris moved into the apartment complex less than a year before the incident. Paris stated that he and Henry would say hello to each other, but that was the extent of their relationship. Paris stated that Henry made him uncomfortable because Henry "would be peaking [sic] over at my house all the time watching who comes in and out." Paris once told Henry "to mind his own business because he was always asking who that was coming out of my house and stuff like that."
 {¶ 7} According to Paris, about a month before the incident, a girlfriend of his came to visit. "And when she was leaving, I mentioned to her he was standing — I was standing in the doorway. She was on the outside; and I told her, `Don't give away my hugs.' As she proceeded to leave my house, he heard me; and he came running towards her." Henry's manner was not threatening, according to Paris, it was "like he wanted her to give him a hug." Paris approached the woman and told her to get in her car. When she did, Paris went back inside. He and Henry did not exchange words.
 {¶ 8} On the day of the incident, Paris testified that Henry raised his voice and said, "`the girl is not your girlfriend,'" and "`you need to stop hanging around these other people, letting them in your house.'" Paris "told him I didn't have time for this, but then I turned — as [he] went to go up the steps and head towards his apartment, I thought he was going to go in. I *Page 4 
turned to go toward the store, and I could see from the side view him coming back so I turned around; and at that time he was down and had the shovel swinging straight at me, and the shovel came at me. I threw my arm up." Paris then "took my cane right here; and I put it on the handle part, pushing it down, pushing it down, keeping it from hitting me because he was hitting me several times. That's how I got these scratches on here." Paris was able to put Henry in a headlock with his injured arm, and the altercation then ended. Paris stated, had he not turned around, Henry would have struck him in the back of the head with the shovel. Photographs of Paris' injury were admitted into evidence.
 {¶ 9} Julian Henderson testified that he was in his apartment on March 12, 2007, when he heard arguing outside. According to Henderson, "that's when I walked over; and I looked outside. That's when I seen Steve arguing with him; and then that's when like the next thing, the next minute I seen him with the shovel and hit him on the arm and then — and then he had him in a head lock." Henderson initially heard Paris tell Henry to leave him alone. Henderson stated that he backed up from the window because he did not want to be seen and get involved in the dispute. He stated that Paris did not hit Henry, "He just had him in a headlock. He told him to leave him alone. He's asking him nice to leave him alone." Henderson stated that Paris released Henry. Some time later, Henderson told Paris that he observed the incident.
 {¶ 10} Following a jury view of the area where the incident took place, Henderson testified that a bush in front of the window through which he observed the incident did not have leaves on it on March 12, 2007, and that it did not obstruct his view.
 {¶ 11} According to Henry, he and a friend, Roosevelt Hoefer, were working on Henry's van a few days before the incident when a car pulled up and a woman named Belletra Woodson *Page 5 
got out, calling to Henry. Henry stopped what he was doing and approached Belletra. Henry testified, "She gave me a hug and a kiss on the cheek and patted me on the back and said, `Thank you for helping me move.'" Henry stated that Paris ran out of his apartment and said to Henry, "`You SOB. Don't hug my wife. Do that again, I'll F you up.'" Henry testified that he resumed working on his van, and then Henry "come towards me again, and she stepped in between us. And she told him he didn't have no right to do that. She'd hug who she wanted to hug, and she hugged me because I helped her out; and that was all, and he didn't like it." Henry stated that later in the day, he went to Auto Zone to get some parts for his van, and when he returned, Paris came out of his apartment and yelled to Henry, "`You son-of-a-bitch, you ever hug her again, I'm going to F you up, and don't forget it. I'm going to F you up.'"
 {¶ 12} On the day of the incident, Henry testified that he was outside crushing cans and he observed Paris leave his apartment and walk down the sidewalk past Henry. According to Henry, "I looks up. I'm bent down. I happen to look up, and I see him coming. So [the] shovel was right there. I grabbed the shovel like this. (Indicating). I come up, and I smacked him across the elbow; and when I went to turn like that, I slipped. He head locked me. I wrestled him to the sidewalk. I got in the van and left." Henry stated that he believed Paris was "going to bust me with the cane. * * * He done threatened me. He's done threatened to do me in." Henry did not contact the police after the incident. Henry testified that he has a prior felony conviction for domestic violence against his brother. Finally, Henry testified that he knows Henderson, that Henderson has been to Henry's home and made CD's for him, and that Henderson is "all right."
 {¶ 13} Henry asserts three assignments of error. His first assignment of error is as *Page 6 
follows:
 {¶ 14} "THE JURY'S VERDICT IN THE CASE AT HAND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence `weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." State v. Dossett, Montgomery App. No. 20997,2006-Ohio-3367.
 {¶ 16} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve."State v. DeHass (1997), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 17} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at *Page 7 
its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 18} According to Henry, the jury lost its way "by refusing to find by a preponderance of the evidence that Henry proved his affirmative defense of self-defense," citing the "disagreement that the parties had over Paris's girlfriend," the "threats that Paris made towards Henry," and "the aggressive way in which Paris approached Henry on the day of the alleged assault." The State responds, while the parties' testimony differs regarding the sequence of events on March 12, 2007, Henderson, an independent witness, corroborated Paris' testimony, and it was up to the jury to assess the credibility of all the witnesses.
 {¶ 19} We agree with the State. The jury chose to believe Paris' testimony, as corroborated by Henderson's, over Henry's testimony. Paris testified that, when Henry approached him, he told Henry to leave him alone, and that Henry attacked him with the shovel as Paris turned to walk to the store. Henderson testified that he heard Paris tell Henry to leave him alone, and he observed Henry then hit Paris with the shovel. According to Paris and Henderson, Henry never defended himself from offensive conduct on the part of Paris, and it was Henry, not Paris, who was the aggressor. Given the evidence, the jury reasonably concluded that Henry had no basis to argue self-defense. Since the jury did not lose its way and create a manifest injustice warranting a new trial, Henry's first assignment of error lacks merit and is overruled.
 {¶ 20} Henry's second assignment of error is as follows:
 {¶ 21} "THE JURY'S VERDICT SHOULD BE OVERTURNED BECAUSE APPELLANT DID NOT HAVE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 22} "We review the alleged instances of ineffective assistance of trial counsel under *Page 8 
the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). State v. Mitchell, Montgomery App. No. 21957, 2008-Ohio-493.
 {¶ 23} Counsel for Henry requested that the court instruct the jury on self defense, the lesser included offense of assault, and the lesser included offense of disorderly conduct. According to Henry, his counsel was deficient in failing to request a jury instruction on the lesser included offense of aggravated assault, a felony of the fourth degree that carries a maximum penalty of 18 months in jail. Henry argues that in light of Paris' alleged threats to "F up" Henry, and his aggressive conduct in approaching Henry, cane in hand, "an instruction on aggravated assault would have allowed the jury to consider whether Mr. Henry was provoked in this incident, even if Mr. Paris's actions did not rise to such level that would have justified self-defense by Mr. Henry." Further, Henry argues, his counsel was deficient for failing to request a continuance when Roosevelt Hoefer, who had been subpoenaed to testify for Henry, failed to *Page 9 
appear. Attached to Henry's brief is a copy of a document indicating that personal service was effected on Hoefer on June 12, 2007, the day of Henry's trial. The document is file-stamped June 13, 2007.
 {¶ 24} The State responds, "the jury could be confused by Appellant's arguments that he acted in fear or alternatively in a fit of rage and it is a trial strategy to go solely with the self-defense theory." The State further asserts, "Mr. Hoefer's testimony would only relate to the earlier incident involving the victim's girlfriend; he was not present on the day of March 12, 2007. Therefore, his testimony would have provided minimal assistance to the jury in assessing the events of the felonious assault and failure to secure his testimony would not have prejudiced Appellant."
 {¶ 25} We agree with the State. R.C. 2903.12 defines the offense of aggravated assault as follows: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: (1) Cause serious physical harm to another * * * ." Henry argued that he acted in self-defense. Henry's counsel "could have reasonably concluded that presenting the jury with conflicting theories of the case would have been counterproductive. The theory of self-defense is based upon fear, whereas aggravated assault must be based upon passion or rage. Counsel may have concluded that it would have been more difficult to convince the jury that [Henry] had been in fear while at the same time presenting evidence that he had acted out of passion or rage. Counsel apparently believed that self-defense was the stronger argument. * * *
 {¶ 26} "As discussed above, a reviewing court may not second-guess decisions of *Page 10 
counsel that can be considered matters of trial strategy. (Internal citation omitted). Debatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy was available." State v.Baker, Greene App. No. 2004 CA 29, 2005-Ohio-45 (finding trial counsel's failure to request aggravated assault instruction as lesser included offense of felonious assault and attempted murder was reasonable where Appellant argued self-defense.) Henry's counsel could have reasonably concluded that the best strategy was to request an instruction on only one theory, self-defense, and not the other, aggravated assault, and we will not second-guess that decision or deem it ineffective assistance.
 {¶ 27} As to Henry's argument regarding his counsel's failure to request a continuance, we note that, while Henry attached a document indicating that Hoefer was served on the day of trial, the summary of docket and journal entries inexplicably does not disclose that Hoefer was subpoenaed to testify. Even if Hoefer were properly subpoenaed on the day of trial, Henry has not demonstrated how his counsel's failure to request a continuance prejudiced Henry; Hoefer was not present when the assault occurred and could have offered no evidence material to Henry's claim of self-defense. Since there is nothing in the record to suggest that, had counsel requested a continuance to obtain Hoefer's testimony, the outcome of the trial would have been different, we see no ineffective assistance, and Henry's second assignment of error is overruled.
 {¶ 28} Henry's third assignment of error is as follows:
 {¶ 29} "THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER CHARGE OF AGGRAVATED ASSAULT WAS PLAIN ERROR."
 {¶ 30} "Plain errors or defects affecting substantial rights may be noticed although they *Page 11 
were not brought to the attention of the court." Crim. R. 52(B). "To constitute plain error, the error must be obvious on the record, and the error must be so fundamental that it should have been apparent to the trial court without objection. (Internal citation omitted). `Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' (Internal citation omitted). The decision to conduct a plain error review is discretionary with the reviewing court." State v.Goldman, Clark App. No. 2006 CA 103, 2007-Ohio-6682.
 {¶ 31} "Aggravated assault is an inferior degree of felonious assault. (Internal citation omitted). The elements of both crimes are identical, except that aggravated assault has the mitigating element of serious provocation. * * * For provocation to be serious, it must be `reasonably sufficient to bring on extreme stress' and `to incite or to arouse the defendant into using deadly force.'" Id.
 {¶ 32} Henry claims, "Even if the emotions stirred up in Henry when approached by Paris did not rise to the level needed for the self-defense affirmative defense to succeed, certainly these emotions arose to the level of `sudden passion' necessary to make Henry's actions an aggravated assault, as opposed to felonious assault."
 {¶ 33} The evidence herein would not have supported a conviction for aggravated assault because there was no serious provocation of Henry. Henry approached Paris, and swung the shovel at him when Paris turned away from him. Paris' and Henderson's testimony was consistent that Paris said he wanted to be left alone. Even if Paris told Henry that he would "F him up," and Henry believed that Paris was going to "bust" him with his cane, Henry did not indicate that Paris raised his cane to strike him, and the record is devoid of serious provocation *Page 12 
that would have aroused Henry to use deadly force. Therefore, the trial court's failure to charge on the lesser offense of aggravated assault was not plain error. Henry's third assignment of error is overruled, and the judgment of the trial court is affirmed.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1